WANDA MEDINA *et al.*, Plaintiffs-Appellants, v. GRAMMER TAYLOR *et al.*, Defendants-Appellees.

First District (1st Division)    Nos. 1—88—1366, 1—88—1430 cons.

Opinion filed June 26, 1989.

Steck, Spataro & O'Brien, of Chicago (George S. Spataro, of counsel), for appellant Wanda Medina.

Grubman & Nathan, P.C., of Chicago (Donald S. Nathan and David D. Willer, of counsel), for appellant Charles J. Fogel.

Joyce A. Hughes, of Chicago Transit Authority, and P. Scott Neville, Jr., both of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:
Wanda Medina and Charles Fogel brought separate negligence actions against Grammer Taylor and Oliver Robertson (defendants),

both employee/bus drivers of the Chicago Transit Authority (CTA). The circuit court dismissed their actions for failure to give notice and file suit within the statutory limitations prescribed under the Metropolitan Transit Authority Act (the Act) (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 301 *et seq.*). In this consolidated appeal, Medina and Fogel raise the sole issue of whether the circuit court erred in applying the statutory limitations under the Act.

After Medina's vehicle was struck from behind by a CTA bus driven by Taylor on July 3, 1984, she filed a notice of claim with the CTA on July 1, 1985, and a civil action against Taylor in the circuit court of Cook County on June 19, 1986. Fogel filed suit against Robertson on September 19, 1985, in the circuit court of Cook County after his vehicle was struck from behind by a CTA bus driven by Robertson on October 8, 1984. Fogel did not, however, notify the CTA of his claim.

Defendants filed motions to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(5)) based on Medina's and Fogel's failure to comply with the statutory limitations under section 41 of the Act, which requires notice to be given to the CTA within six months and suit to be filed within one year from the date of injury. (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 341.) The circuit court granted defendants' motions on the grounds that Medina and Fogel failed to give notice of their injuries within six months from the date of injury and Medina failed to file suit within one year from the injury date.

■ Section 41 of the Act contains limitations provisions for civil actions filed against the "Authority." It provides:

> "No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it commenced within one year from the date that the injury was received or the cause of action accrued. Within six (6) months from the date that such an injury was received or such cause of action accrued, any person who is about to commence any civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the secretary of the Board and also in the office of the General Attorney for the Authority *** a statement, in writing ***. *** If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 341.)

Thus, to file a civil action against the CTA, a plaintiff must (1) give written notice to the CTA within six months of the accident, and (2) file suit within one year after the accident.

Plaintiffs initially contend that these limitations provisions were intended to apply to the CTA and not to its employees when they are sued in their individual capacities. They maintain that the applicable statute of limitations is the two-year limitation for personal injuries under the Code (Ill. Rev. Stat. 1985, ch. 110, par. 13—202). We disagree.

The Illinois Supreme Court has recently held in a case involving the doctrine of *respondeat superior* that a similar statute of limitations was applicable to both employer and employee for the same tort. (*Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 157, 510 N.E.2d 883, 886.) In *Penkava*, a registered nurse was named as a party-defendant in a medical malpractice action, along with a doctor, a hospital and the administrator of plaintiff's estate. Each defendant filed a motion to dismiss plaintiff's complaint on the basis that her claims were barred by the statute of limitations for medical malpractice actions, which expressly addressed physicians, dentists, and hospitals, but did not mention registered nurses.[1] (Ill. Rev. Stat. 1981, ch. 83, par. 22.1; ch. 110, par. 13—212.) The appellate court affirmed the circuit court's dismissal of all defendants except as to the nurse, on the basis that the legislature did not intend her to be encompassed under the statute of limitations provisions for medical malpractice. The Illinois Supreme Court, however, reversed the appellate court, holding that one statute of limitations is applicable to both employer and employee for a single tort. *Penkava*, 117 Ill. 2d at 157, 510 N.E.2d at 886.

In reaching its conclusion, the supreme court analyzed the intent of the legislature in enacting the statute, noting that intent should be gathered not only from the language used, but also from the reasons for the enactment. (*Penkava*, 117 Ill. 2d at 154, 510 N.E.2d at 885; *Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, 498 N.E.2d 1102, 1104.) From its determination that the legislature enacted the provi-

---

[1]Section 22.1 of "An Act in regard to limitations" states, in pertinent part, as follows:

"No action for damages for injury or death against any physician, dentist or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date *** of the injury or death ***." Ill. Rev. Stat. 1981, ch. 83, par. 22.1.

Subsequently, the statute was amended to include registered nurses. Ill. Rev. Stat. 1985, ch. 110, par. 13—212.

sion to ensure continued availability of medical malpractice insurance,[2] the court concluded that the term "hospital," for purposes of the limitations provisions, embraces a registered nurse when acting within the scope of her employment. (*Penkava*, 117 Ill. 2d at 155, 510 N.E.2d at 886.) It reasoned that a hospital is more than a building which provides medical treatment, "it is also composed of persons, including nurses, who act on behalf of the hospital in providing treatment for patients." *Penkava*, 117 Ill. 2d at 156, 510 N.E.2d at 886.

The instant case is analogous to *Penkava*. The Act provides for certain limitations for civil actions filed "against the Authority." Ill. Rev. Stat. 1985, ch. 111⅔, par. 341.

■ The legislature's intent as to the term "Authority" may be gathered from the language of the statute and the purpose it seeks to serve. (See *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310, 242 N.E.2d 267, 270.) The purpose of the special limiting requirements in the Act was to allow the CTA the opportunity to make timely investigations, to determine its budget in advance for taxing purposes (*King v. Johnson* (1970), 47 Ill. 2d 247, 251, 265 N.E.2d 874, 876), and to limit the number of suits against the CTA (*Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313, 320-21, 95 N.E.2d 447, 451). Since these purposes would be thwarted by, in effect, allowing plaintiffs a longer period of limitations against the CTA by way of subsequent contribution or indemnification actions to reach the "deep pocket" of the CTA, we conclude that the legislature must have intended that the limitations would apply to actions brought against CTA employees as well as the CTA. Moreover, as in *Penkava*, employees of the CTA are merely an extension of their employer, the CTA.

■ This position is further buttressed by Illinois case law which deems the CTA and its employees as one unified tortfeasor for purposes of the *res judicata* effect of a judgment. *Muscare v. Voltz* (1982), 107 Ill. App. 3d 841, 438 N.E.2d 620; *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217; *Aldridge v. Fox* (1952), 348 Ill. App. 96, 108 N.E.2d 139.

■ We reject plaintiffs' contention that *Penkava* is distinguish-

---

[2]The court noted that "the legislature in the mid-1970's was confronted with a medical malpractice insurance problem resulting from an accelerated rise in premiums charged by a number of insurance companies and the withdrawal of other companies from the medical malpractice insurance market." (*Penkava*, 117 Ill. 2d at 155, 510 N.E.2d at 885.) As a remedy, the legislature enacted "An Act in regard to limitations," which limited the time within which a medical malpractice action could be brought. Ill. Rev. Stat. 1981, ch. 83, par. 22.1.

able from the case at bar because the doctrine of *respondeat superior* is absent here and the CTA is a mere "stranger" to this case. In response to defendants' section 2—619 motion to dismiss, plaintiffs did not submit affidavits or any other evidence contradicting defendants' assertion of the *respondeat superior* doctrine in their motion to dismiss.[3] (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(5).) Therefore, the circuit court correctly relied on the facts set forth in defendants' motion. Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c).

Plaintiffs' reliance on *Mitsuuchi v. City of Chicago* (1987), 164 Ill. App. 3d 815, 518 N.E.2d 313, *rev'd* (1988), 125 Ill. 2d 489, 532 N.E.2d 830, for the proposition that an employee may seek to recover damages from a co-employee even where the action is time barred as to her employer is misplaced. The Illinois Supreme Court expressly overruled the appellate court's finding as to this proposition, reasoning that to allow a suit against an employee where the same suit is barred as to the employer under the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, pars. 22—306, 22—307) would contravene the statute by creating an indemnification situation. (*Mitsuuchi*, 125 Ill. 2d at 497, 532 N.E.2d at 833.) We, too, find that if plaintiffs are permitted to maintain their suits against employees in these circumstances, indemnification claims against the CTA would result, in derogation of the purposes of the Act. Contrary to plaintiffs' assertions on appeal, *Mitsuuchi* supports our rationale that plaintiffs' actions are barred.

■ Next, plaintiffs contend that the limitations under the Act are unconstitutional because no legitimate State purpose or rational basis exists for such a special statutory classification. This argument has been defeated in *Schuman* (407 Ill. 313, 95 N.E.2d 447) and *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 368 N.E.2d 105. In *Schuman*, the supreme court found that due to the CTA's size and the threat of "blind claims,"[4] a rational basis exists for specialized notice and civil action limitations periods. (*Schuman*, 407 Ill. at 320-21, 95 N.E.2d at 451.) In *Fujimura*, the court found a legitimate State purpose for the CTA's limitations provisions because of its unique governmental function and also the high duty of care owed to its passengers, which is nonexistent in other public entities. *Fujimura*, 67 Ill. 2d at 513, 368 N.E.2d at 108.

---

[3]In nonjury cases, as here, the court may resolve the section 2—619 motion to dismiss even where there is a disputed issue of fact, relying on affidavits or any other evidence. Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c).

[4]*Schuman* defines "blind claims" as those not reported to the CTA by its employees. *Schuman*, 407 Ill. at 320, 95 N.E.2d at 451.

Accordingly, we hold that the Act's limitations provisions extend to an employee of the CTA. We, therefore, affirm the orders of the circuit court of Cook County dismissing defendants from these actions.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.