JORGELINA SEGARRA, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—92—3674

Opinion filed June 23, 1994.

Harold J. Robbins, of Chicago, for appellant.

William Farley, of Chicago Transit Authority, and P. Scott Neville, Jr., both of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Jorgelina Segarra brought a negligence action against the Chicago Transit Authority (CTA) and an unidentified CTA bus driver to recover damages for injuries she allegedly sustained when she stepped off a moving CTA bus. The trial court granted the CTA's motion to dismiss (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) because plaintiff failed to comply with the notice requirements set forth in section 41 of the Metropolitan Transit Authority Act (the Transit Act) (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 341) for civil actions against the CTA. After plaintiff amended her complaint to name as a defendant Nelson Machado, who was allegedly driving the CTA bus at the time of the accident, the trial court granted Machado's motion to dismiss the complaint with prejudice. On appeal, plaintiff argues (1) that the trial court improperly dismissed her complaint pursuant to section 41 of the Transit Act and (2) that the six-month notice requirement under section 41 is unconstitutional because it denies her equal protection of the law. For the reasons presented below, we affirm.

On December 19, 1986, plaintiff filed a complaint against the CTA and John Doe, the unidentified driver of the CTA bus on which plaintiff suffered her injuries. Plaintiff's complaint alleged that on December 19, 1985, defendants carelessly and negligently allowed the bus to move while she was stepping off the bus, and as a direct and proximate result, plaintiff sustained "severe and permanent injuries." The complaint further alleged that on November 20, 1986, plaintiff served written notice of her claim for personal injuries upon the CTA's "Secretary" and "General Attorney."

On April 1, 1987, defendant CTA moved to dismiss this action on the basis that plaintiff had not complied with the notice requirements of section 41. Under section 41, a claimant who brings a civil action against the CTA must provide proper notice to the office of the secretary of the Transit Board and the office of the CTA's general attorney within six months of the accident. (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 341.) The CTA argued that plaintiff had not, at any time, filed a proper notice statement either in the office of the secretary of the Board or in the office of the general attorney for the CTA.

Three weeks later, plaintiff responded that in March 1986 she had sent a letter to the office of the general attorney for the CTA

stating the date and time of the accident. On July 14, 1987, she filed an affidavit, asserting that "[i]n the first part of March, 1986, a letter was written for me, which I signed, which letter stated the time, date of the occurrence of the accident, and which letter was addressed to the lawyers of the Chicago Transit Authority" at the Merchandise Mart Plaza.

The trial court subsequently dismissed the CTA as a defendant pursuant to section 41 of the Transit Act. The trial court's order did not specify how plaintiff failed to comply with the requirements of section 41. In addition to dismissing the CTA as a defendant, the trial court ordered that the case "shall continue as to Nelson Machado" and granted plaintiff leave to file an amended complaint.

On October 1, 1987, plaintiff filed her amended complaint, naming both the CTA and Machado as defendants. After the case was sent to mandatory arbitration, in September 1991 the arbitrators awarded plaintiff the maximum amount of $15,000. The CTA rejected the award and requested a trial.

On September 23, 1992, the trial court granted Machado's motion to dismiss on the basis that plaintiff had not complied with the six-month notice provision of section 41 and dismissed the case with prejudice. Plaintiff appeals from this dismissal order.

## DISCUSSION

Section 41 of the Transit Act requires that actions against the CTA be commenced within one year from the date of injury. (Ill. Rev. Stat. 1985, ch. $111^2/3$, par. 341.) Persons seeking to commence such actions must, within six months from the date of injury, "file in the office of the secretary of the [Chicago Transit] Board and also in the office of the General Attorney for the [CTA] either by himself, his agent, or attorney," giving the names and addresses of relevant parties, including attending physicians, and the time and place of the accident. (Ill. Rev. Stat. 1985, ch. $111^2/3$, par. 341.) Failure to comply with the above provisions will result in dismissal of the action against the CTA. (Ill. Rev. Stat. 1985, ch. $111^2/3$, par. 341.) Section 41 is a mandatory statute, requiring that a claimant strictly comply with each of its elements. *Niziolek v. Chicago Transit Authority* (1993), 251 Ill. App. 3d 537, 542, 620 N.E.2d 1097, 1100; *Bonner v. Chicago Transit Authority* (1993), 249 Ill. App. 3d 210, 212, 618 N.E.2d 871, 872.

Plaintiff argues that she complied with the requirements of section 41 by filing her complaint against the bus driver within one year of the date of the accident. She maintains that the six-month limitation provision in section 41 applies only to the CTA and not to

the CTA's employees when they are sued in their individual capacities. We disagree.

The Illinois Appellate Court has consistently held that the limitation provisions of section 41 for civil actions filed against the CTA also apply to actions brought against CTA employees. Most recently, for instance, in *Niziolek v. Chicago Transit Authority* (1993), 251 Ill. App. 3d 537, 620 N.E.2d 1097, the court rejected the plaintiff's contention that even if the dismissal of his action against the CTA were affirmed, his negligence action against the CTA's bus driver should be reinstated. The *Niziolek* court held that the trial court properly dismissed plaintiff's claims against the CTA, since the limitations provisions in the Transit Act " 'apply to actions brought against CTA employees as well as the CTA.' " *Niziolek*, 251 Ill. App. 3d at 549, 620 N.E.2d at 1105, quoting *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 507, 581 N.E.2d 211, 213; *Medina v. Taylor* (1989), 185 Ill. App. 3d 808, 812, 542 N.E.2d 33, 35.

Illinois courts have also readily affirmed the dismissal of actions in which claimants failed to comply with section 41's strict requirement of filing notice of an accident "in the office of the secretary of the [Chicago Transit] Board and also in the office of the General Attorney for the Authority." (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 341.) In *Sanders v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 505, 581 N.E.2d 211, for example, the appellate court affirmed the dismissal of an action against the CTA where plaintiff gave notice of her pending action to the CTA's general counsel, but not to the secretary of the Board. Plaintiff in *Sanders* contended that by giving notice to the CTA general counsel, she substantially complied with the statute. The *Sanders* court disagreed; noting that section 41 was a mandatory statute, the court held that plaintiff did not comply with the statute because she failed to notify the secretary of the Board, as required. *Sanders*, 220 Ill. App. 3d at 507, 581 N.E.2d at 213; see also *Patinkin v. Regional Transportation Authority* (1991), 214 Ill. App. 3d 973, 977-78, 574 N.E.2d 743, 746 (notice of intention to file suit for injuries sustained aboard elevated train provided to Regional Transportation Authority secretary and general attorney did not satisfy statutory preconditions of section 41 for actions against CTA); *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 921, 548 N.E.2d 403, 405 (notice letter mailed to CTA claims manager at Merchandise Mart did not constitute proper filing for purposes of section 41).

●1 We hold that plaintiff did not comply with section 41 because she failed to give timely notice of her pending action to the office of the general attorney of the CTA and the office of the secretary of the

Transit Board. Although plaintiff's July 1987 affidavit asserts that she addressed a letter concerning the accident to "the lawyers of the [CTA]" at the Merchandise Mart Plaza in March 1986, this affidavit does not state plaintiff also sent a proper notice letter to the office of the secretary of the Transit Board. Moreover, the allegation in plaintiff's amended complaint that she served written notice upon both the secretary and general attorney of the CTA on November 20, 1986, is also insufficient; these notices were not sent until 11 months after the accident.

Plaintiff also contends that the statutory scheme requiring a claimant to give notice under section 41 of the Transit Act, but not requiring such notice under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*), is unconstitutional and denies her the equal protection of the law. Under the Tort Immunity Act, a claimant must bring his or her personal injury action within one year from the date that the injury occurred or the cause of action accrued. (Ill. Rev. Stat. 1991, ch. 85, par. 8—101.) Plaintiff asserts that no sufficient reason exists why the Metropolitan Transit Authority Act should impose more rigid notice requirements than the Tort Immunity Act.

Our supreme court has emphasized the uniqueness of the CTA's function when upholding statutes which classified the CTA differently than other municipal entities. In *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 368 N.E.2d 105, for example, the plaintiff challenged the six-month notice requirement and the one-year statute of limitations contained in section 41 of the Transit Act. The plaintiff argued that these provisions violated equal protection because the Tort Immunity Act imposed a less stringent one-year notice requirement and two-year limitations period on claims initiated against other municipal entities.

●2 The supreme court disagreed. Reversing the trial court's ruling that section 41 was unconstitutional, the *Fujimura* court held that the CTA's unique function and activities furnished a rational basis for distinguishing the CTA from other public entities. The court explained that the legislature could permissibly classify the CTA differently from other municipal corporations because the CTA was established for the sole purpose of operating and maintaining a mass transportation system in the Chicago metropolitan area. The court noted that "a public entity having as its only purpose the operation of one of the largest mass transit systems in the United States performs a unique governmental function with its own peculiar problems having no parallel in the usual functions of other local

governmental entities." (*Fujimura*, 67 Ill. 2d at 513, 368 N.E.2d at 108.) The CTA also differed from other local governmental entities, the court added, in its size, responsibilities as a common carrier, and the large number of personal injury claims initiated against it. See also *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 243-44, 531 N.E.2d 1, 6-7 (Transit Act provision conferring broader immunity upon CTA than other municipal entities under Tort Immunity Act did not violate equal protection guarantee, because CTA was created to provide transportation to public at large rather than to guarantee safety of individual passengers); *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313, 320-21, 95 N.E.2d 447, 451 (rejecting equal protection challenge to six-month notice and one-year limitation requirements under section 41 because of the CTA's size, risk of personal injury claims, and nonprofit status).

We believe that *Fujimura* is dispositive and hold that the limitations provisions of section 41 do not deny plaintiff equal protection. See *Niziolek*, 251 Ill. App. 3d at 548-49, 620 N.E.2d at 1104-05 (reaffirming support for the *Fujimura* rationale); *Medina*, 185 Ill. App. 3d at 813, 542 N.E.2d at 36 (limitation provisions in section 41 have a legitimate State purpose and are not unconstitutional).

For the above reasons, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.