793 N.E.2d 83 (2003)
341 Ill. App.3d 573
275 Ill.Dec. 603
Daven CURTIS, Plaintiff-Appellant,
v.
CHICAGO TRANSIT AUTHORITY, a Municipal Corporation, and Jeanne Butler, Individually, and as Agent, Servant and/or Employee of Chicago Transit Authority, Defendants-Appellees.
No. 1-02-0815.
Appellate Court of Illinois, First District, First Division.
June 23, 2003.
*84 Michael W. Rathsack, Chicago (Don M. Sowers and Michael W. Rathsack, of counsel), for Appellant.
Robert S. Rivkin, General Counsel of the Chicago Transit Authority, Chicago (Thomas J. Bamonte, Ellen Partridge, Cecelia M. Comito, of counsel), for Appellee.
Presiding Justice GORDON delivered the opinion of the court:
Plaintiff, Daven Curtis, filed a four-count complaint against defendants, Chicago Transit Authority (CTA) and Jeanne Butler, a CTA employee, on March 22, 2000, seeking damages for a traffic collision involving her car and a CTA bus driven by defendant Butler. The CTA ultimately moved to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)), arguing that plaintiff's notice under section 41 of the Metropolitan Transit Authority Act (the Transit Act) (70 ILCS 3605/41 (West 2000)) was defective because it provided the wrong date of the accident. The trial court granted the CTA's motion to dismiss and plaintiff appeals. We affirm for the following reasons.

BACKGROUND
Plaintiff's alleged injury occurred shortly after midnight on February 13, 2000, when a CTA bus, driven by Bulter, collided with her car at the intersection of Jeffrey and 79th Streets in Chicago. On February 14, 2000, plaintiff telephoned the CTA and reported she had been in an accident with a CTA bus at 12:12 a.m. on February 13, 2000. On March 16, 2000, plaintiff filed notice of her negligence claim *85 pursuant to section 41 of the Transit Act, alleging that she sustained injuries when a CTA bus ran a red light at the intersection of 79th and Jeffrey Streets and hit her car. The notice stated in error that the accident occurred on February 12, 2000, at approximately 1:30 a.m. Plaintiff's notice further reported that plaintiff was initially treated by emergency technicians and transported by ambulance to Cook County Hospital, where she was diagnosed with a fractured left clavicle and broken ribs. She stated that she had also been treated by Dr. Joseph Jackson, Dr. Stamelos and doctors at Northwest Community Hospital.
On March 22, 2000, plaintiff filed a four-count complaint against the CTA, also alleging, in error, that she was injured due to an accident with a CTA bus on February 12, 2000. On May 1, 2000, the CTA filed an answer to plaintiff's complaint denying the allegation that plaintiff was lawfully driving her automobile on February 12, 2000, when she was negligently struck by a CTA bus. The CTA also filed an affirmative defense, alleging that plaintiff was contributorily negligent in causing the accident. The affirmative defense properly identified the date of the accident as February 13, 2000. On May 19, 2000, plaintiff filed a denial of all of the CTA's affirmative defense allegations.
Both parties filed answers to written interrogatories and the CTA responded to plaintiff's request for production on August 15, 2000. Attached to the response were: (1) an incident report completed by bus driver Christopher Clemons, identifying the date of the accident as February 12, 2000; (2) a telephone complaint report filed by another claimant, Christopher Roberts, who reported the accident date as February 13, 2000; and (3) multiple pictures of the scene of the accident. Thereafter, plaintiff was deposed on January 22, 2001, at which time she stated the accident occurred just after midnight on February 13, 2000. A Chicago police department report also indicated that the accident occurred on February 13.
On February 20, 2001, the CTA filed a motion to dismiss plaintiff's complaint, alleging that plaintiff failed to comply with the requirements of section 41 of the Transit Act. The CTA argued that plaintiff's section 41 notice was deficient because it contained the wrong date and time of the accident, as evidenced by her deposition testimony. Plaintiff responded that revised section 41 (effective July 1, 1998, pursuant to Public Act 90-451 § 1) was to be construed liberally in favor of the plaintiff and that she had substantially complied with section 41. The circuit court denied the motion to dismiss, finding that plaintiff had cured the defect in her section 41 notice by filing her complaint within the required six-month notice period. On June 18, 2001, the CTA filed a motion to reconsider the denial, which was granted. In granting the CTA's motion to dismiss, the trial court stated:
"Based upon especially the most recent decisions, most notably the Cione decision, there is strict compliance and that means what it says. If you don't strictly comply, you are out. There is no strict compliance here, it's 24 hours difference. There's no question that the CTA knows, but that's not the guidelines. They do know, but that's not the guidelines. I'm going to grant the motion to reconsider and grant the motion to dismiss."
Plaintiff now appeals the dismissal and, for the following reasons, we affirm the trial court's judgment.

ANALYSIS
A section 2-619 motion to dismiss admits the legal sufficiency of a plaintiff's complaint while raising a defect, *86 defense or other affirmative matter that appears on the face of the complaint or is established by external submissions, and defeats the plaintiff's claim. 735 ILCS 5/2-619 (West 2000); Joseph v. Chicago Transit Authority, 306 Ill.App.3d 927, 930, 240 Ill.Dec. 46, 715 N.E.2d 733 (1999). An appeal from a section 2-619 motion raises a question of law, which is subject to de novo review. Joseph, 306 Ill.App.3d at 930, 240 Ill.Dec. 46, 715 N.E.2d 733.
The instant cause of action was dismissed due to plaintiff's failure to comply with section 41 of the Transit Act. Section 41 provides that, within six months of an alleged injury, a plaintiff must file written notice of a cause of action against the CTA in the office of the secretary of the Board and in the office of the General Counsel. 70 ILCS 3605/41 (West 2000). The notice must provide: (1) the name of the person to whom the cause of action has accrued; (2) the name and residence of the person injured; (3) the date and approximate hour of the accident; (4) the place or location where the accident occurred; and (5) the name and address of the attending physician, if any. 70 ILCS 3605/41 (West 2000). Where the notice required by section 41 is not filed as provided, a civil action against the CTA "shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." 70 ILCS 3605/41 (West 2000). Where the word "shall" appears in a legislative provision, the requirements of that provision are generally interpreted as mandatory. Watson v. Howard, 322 Ill.App.3d 562, 565, 255 Ill.Dec. 326, 749 N.E.2d 427 (2001). Our courts have consistently held that the section 41 notice requirement demands strict compliance and the burden of such compliance falls solely on the plaintiff. See Cione v. Chicago Transit Authority, 322 Ill.App.3d 95, 97, 255 Ill.Dec. 18, 748 N.E.2d 722 (2001); Dimeo v. Chicago Transit Authority, 311 Ill.App.3d 152, 155, 243 Ill.Dec. 783, 724 N.E.2d 92 (1999); Yokley v. Chicago Transit Authority, 307 Ill.App.3d 132, 136, 240 Ill.Dec. 358, 717 N.E.2d 451 (1999). Regardless of the CTA's actual knowledge of the facts pertaining to an injury, a notice missing a single element or containing an incorrect element is considered defective and requires dismissal. Cione, 322 Ill.App.3d at 97, 255 Ill.Dec. 18, 748 N.E.2d 722, quoting Dimeo, 311 Ill.App.3d at 155, 243 Ill.Dec. 783, 724 N.E.2d 92 ("notices missing even a single element are defective, as well as notices containing an incorrect element * * *."); accord Yokley, 307 Ill.App.3d at 137, 240 Ill.Dec. 358, 717 N.E.2d 451.
Plaintiff in the instant action concedes that her section 41 notice contained the incorrect date. Her notice listed the date and time of the accident as February 12, 2000, at approximately 1:30 a.m., while the accident occurred on February 13, 2000, at approximately 12:12 a.m. Nevertheless, plaintiff contends the dismissal of her cause of action was improper because the filing of her complaint within the six-month notice period provided in section 41 cured the defect, thereby satisfying the statutory notice requirement. Plaintiff cites this court's decision in Joseph v. Chicago Transit Authority, 306 Ill.App.3d 927, 240 Ill.Dec. 46, 715 N.E.2d 733 (1999), in support of this argument. In Joseph, the plaintiff failed to provide the CTA with written notice of her injury pursuant to section 41. Although she filed her complaint against the CTA within the six-month statutory period, the CTA was not served with the complaint until after the notice period expired. As a result, we found that the plaintiff's failure to comply with section 41 could not be cured by the filing of her complaint, as there was a *87 complete failure to provide the CTA with notice within the required time period. Joseph, 306 Ill.App.3d at 937, 240 Ill.Dec. 46, 715 N.E.2d 733.
In reaching this conclusion, we discussed the case of Saragusa v. City of Chicago, 63 Ill.2d 288, 348 N.E.2d 176 (1976), as well as the dicta based thereon in Streeter v. Chicago Transit Authority, 272 Ill.App.3d 921, 209 Ill.Dec. 401, 651 N.E.2d 579 (1995), and Murphy v. Chicago Transit Authority, 191 Ill.App.3d 918, 139 Ill.Dec. 18, 548 N.E.2d 403 (1989), which stated that the failure to give timely statutory notice could be cured by the filing of a complaint within the proscribed statutory period. Saragusa, 63 Ill.2d at 294, 348 N.E.2d 176; Streeter, 272 Ill.App.3d at 923, 209 Ill.Dec. 401, 651 N.E.2d 579; Murphy, 191 Ill.App.3d at 921, 139 Ill.Dec. 18, 548 N.E.2d 403. Although Saragusa was decided under now-repealed section 8-102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill.Rev.Stat.1971, ch. 85, par. 8-102), Joseph, Streeter and Murphy recognized the same ability to cure a defective notice under section 41 of the Transit Act "in some instances." Murphy, 191 Ill.App.3d at 921, 139 Ill.Dec. 18, 548 N.E.2d 403; see also Streeter, 272 Ill.App.3d at 923, 209 Ill.Dec. 401, 651 N.E.2d 579; Joseph, 306 Ill.App.3d at 933, 240 Ill.Dec. 46, 715 N.E.2d 733.
However, we need not revisit the proposition that the filing of a complaint is an acceptable alternative to section 41 notice because, in this case, as in Joseph, for reasons specific to their own respective facts, the filing of the complaint would not have cured plaintiffs informational deficit. A complaint that contains the same informational defect as the plaintiff's section 41 notice would in no event be curative in that it still fails to provide the CTA with the information required by section 41. See, e.g., Oliver v. City of Chicago, 137 Ill.App.3d 958, 960, 92 Ill.Dec. 617, 485 N.E.2d 428 (1985) (incomplete statutory notice was cured by the filing of a complaint within the statutory notice period, which provided the information that was missing from the original notice). Although plaintiff in this case did provide notice of her injury to the CTA, the notice provided the incorrect date of the accident. Plaintiff subsequently repeated the incorrect date multiple times in her complaint and neglected to correct it even after the CTA provided the proper date in its affirmative defense. In fact, the trial court noted that the incorrect date was repeated again in plaintiff's response to the CTA's motion to reconsider.
Plaintiff nevertheless contends that, pursuant to Saragusa, the mere filing of the complaint within the statutory period sufficiently cures a notice deficiency even if the complaint does not supply all the information required by the notice statute. The Saragusa court stated:
"Under our discovery procedures, a defendant may commence an inquiry into the relevant facts by serving interrogatories as soon as the defendant's appearance or answer is filed * * *. The information bearing on the defendant's liability which may be obtained in this manner will be more complete than what would be obtained under the limited and generalized specifications called for in the statutory notice. Since section 8-102 prescribes no minimum period by which the service of the notice must antedate the commencement of suit, the filing of a complaint within the six-month period affords as much time to investigate the claim as the defendant would have if the notice had been filed within that period. We thus conclude that the filing of suit within the six-month period cured the defect in the *88 notice." Saragusa, 63 Ill.2d at 293-94, 348 N.E.2d 176.
The court further concluded that while presuit notice had previously served a particular purpose due to the nonexistence of pretrial discovery, the advent of such discovery subsequently precluded this purpose. Saragusa, 63 Ill.2d at 295, 348 N.E.2d 176. Modern pretrial discovery techniques afforded by the Civil Practice Act (Ill.Rev.Stat.1933, ch. 110, par. 137 et seq.) provided local government entities with "an adequate alternative method of obtaining notice of the basis of a plaintiff's claim." Saragusa, 63 Ill.2d at 295, 348 N.E.2d 176. It is at this juncture, however, that an analysis under the Tort Immunity Act and section 41 of the Transit Act must diverge. The liberal construction of the 1971 Tort Immunity Act, which was the focus of Saragusa, was consistent with the legislature's extension of the time within which notice must be filed under the Tort Immunity Act in 1973 (see Ill.Rev.Stat.1973, ch. 85, pars. 8-101), and the subsequent total elimination of those notice requirements in 1986 (see Ill.Rev.Stat.1986, ch. 85, par. 8-101; see also Joseph, 306 Ill.App.3d at 935-36, 240 Ill.Dec. 46, 715 N.E.2d 733). These liberalized revisions, however, were not correspondingly extended by the legislature to the six-month notice requirement of the Transit Act. Consequently, the Transit Act remained unchanged, explicitly providing that a cause of action must be dismissed for failure to comply with section 41 requirements. See 70 ILCS 3605/41 (West 2000) (if notice under section 41 is not filed as provided, a civil action filed against the CTA "shall" be dismissed). Moreover, the more stringent requirements of the Transit Act have withstood constitutional equal protection challenges as a result of the magnitude of the CTA's operations. See Fujimura v. Chicago Transit Authority, 67 Ill.2d 506, 10 Ill.Dec. 619, 368 N.E.2d 105 (1977); see also Joseph, 306 Ill.App.3d at 935-36, 240 Ill.Dec. 46, 715 N.E.2d 733.
Despite this split between the Tort Immunity Act and the Transit Act, plaintiff argues that our decision in Joseph generally supported the application of cases construing the Tort Immunity Act, such as Saragusa, to those employing the Transit Act and, therefore, Saragusa's liberal provision for cure applies to her case. We disagree. In Joseph we compared the rationale behind the Tort Immunity Act with that of the Transit Act and concluded that, despite the finding in Saragusa and the dicta in Streeter and Murphy, neither Act would allow for a total lack of notice as occurred in that case. We did not, however, find that the requirements of the notice sections were identical. In fact, we recognized that the legislative desire to give complete and prompt notice of a lawsuit to the CTA may be even stronger than that with regard to other public entities. Joseph, 306 Ill.App.3d at 935, 240 Ill.Dec. 46, 715 N.E.2d 733. We found this desire was reflected in the notice requirements of the Transit Act, which had generally been more strict than those under the Tort Immunity Act. Joseph, 306 Ill.App.3d at 935, 240 Ill.Dec. 46, 715 N.E.2d 733.
Accordingly, while the notice requirements in the Tort Immunity Act might be cured merely by the filing of a complaint (see Saragusa, 63 Ill.2d at 294, 348 N.E.2d 176), section 41 requires stricter compliance as demonstrated by the language of the statute itself (see Puszkarska v. Chicago Transit Authority, 322 Ill.App.3d 75, 78, 255 Ill.Dec. 51, 748 N.E.2d 755 (2001) (where the statutory language is clear, the court looks no further than the plain language to construe the statute)), the previously discussed legislative history and the case law construing the Transit Act (see Fujimura, 67 Ill.2d at 515-16, 10 *89 Ill.Dec. 619, 368 N.E.2d 105 (the "unique function and activities" of the CTA distinguish it from other public entities thereby justifying a shorter notice period than that required under the Tort Immunity Act); Bonner v. Chicago Transit Authority, 249 Ill.App.3d 210, 213, 188 Ill.Dec. 301, 618 N.E.2d 871 (1993) (a plaintiff must rely on cases that construe section 41 of the Transit Act, rather than the Tort Immunity Act, because notice under the Transit Act is measured by a stricter standard)). Therefore, even if a defective section 41 notice may be cured by the filing of a complaint within the statutory period, the complaint must at least provide the statutorily required information, which was previously incorrect or omitted, in order to comply with the strict demands of section 41. See Oliver, 137 Ill.App.3d at 960, 92 Ill.Dec. 617, 485 N.E.2d 428 ("[b]y filing the complaint in the circuit court containing the missing element, [within the statutory time period,] plaintiffs cured their prior defective notice"). If this were not the case, there would be little purpose to the notice requirements. As previously stated, plaintiffs complaint in this case did not correct her defective notice. Her complaint merely provided the same incorrect date of the accident that was contained in her section 41 notice, and she failed to correct the date even after the CTA provided the proper date in its affirmative defense.
Plaintiff argues that the provision of the correct date in the CTA's affirmative defense also weighs in her favor because it shows the CTA had actual notice of the date of the accident. However, as stated previously, the CTA's actual notice does not excuse a plaintiffs failure to strictly comply with the terms of section 41. Cione, 322 Ill.App.3d at 97, 255 Ill.Dec. 18, 748 N.E.2d 722; Dimeo, 311 Ill.App.3d at 155, 243 Ill.Dec. 783, 724 N.E.2d 92; Yokley, 307 Ill.App.3d at 136, 240 Ill.Dec. 358, 717 N.E.2d 451. The fact that the CTA had or could have obtained the correct information despite the deficiency in plaintiff's notice is irrelevant to the issue of whether notice was properly provided, as the CTA has no affirmative duty to obtain information that is missing from or reported incorrectly in a plaintiff's section 41 notice. See Cione, 322 Ill.App.3d at 99, 255 Ill.Dec. 18, 748 N.E.2d 722.
For example, in Hayes v. Chicago Transit Authority, 340 Ill.App. 375, 92 N.E.2d 174 (1950), the plaintiff filed suit against the CTA for injuries she received while riding on a streetcar. One month after the accident, the CTA obtained a written statement from the plaintiff, which provided the details of the incident and the name of her treating physician. Upon the CTA's motion to dismiss for failure to comply with section 41, plaintiff argued that the CTA was in possession of her signed statement as well as her medical records, which provided actual notice of her injury and pending lawsuit. In finding that these documents were insufficient to satisfy the requirements of section 41, the reviewing court stated:
"The fact that the defendant had full knowledge of the facts surrounding the occurrence did not dispense with compliance with the requirement for service. Statutes of this character are mandatory and the giving of the notice is a condition precedent to the right to bring suit." Hayes, 340 Ill.App. at 382, 92 N.E.2d 174.
Hayes was later followed by Patinkin v. Regional Transportation Authority, 214 Ill.App.3d 973, 158 Ill.Dec. 630, 574 N.E.2d 743 (1991). Citing Hayes, the Patinkin court likewise found that the requirements of section 41 are mandatory and that the plaintiff bears the burden of compliance. Patinkin, 214 Ill.App.3d at 976, 158 Ill. *90 Dec. 630, 574 N.E.2d 743. The court noted that the requirement of strict compliance "has been illustrated most often in cases in which notice in accordance with the section's terms was lacking, but the CTA was otherwise made aware of the accident and the injured party's intent to sue." Patinkin, 214 Ill.App.3d at 976, 158 Ill.Dec. 630, 574 N.E.2d 743; accord Dimeo v. Chicago Transit Authority, 311 Ill.App.3d 152, 155, 243 Ill.Dec. 783, 724 N.E.2d 92 (1999) (the CTA's actual knowledge or ability to obtain information missing from a section 41 notice is irrelevant to the validity of the notice, as it is "solely the plaintiffs burden to comply with the section 41 notice requirements").
In accordance with these decisions, the CTA's actual knowledge of the date of the accident in this case, which it gleaned from other sources, is irrelevant in measuring plaintiffs compliance with section 41. It was plaintiff's burden to provide the information required by section 41 and she failed to do so.
Plaintiff further asserts that the CTA's acknowledgment of the correct date in its affirmative defense, in addition to its failure to bring the error to plaintiffs attention and the fact that "the CTA sat on it hands until after the Section 41 notice period and its statute of limitations expired," demonstrates that the CTA should be estopped from raising the notice deficiency. However, the courts generally do not favor the application of the doctrine of equitable estoppel to municipal corporations. Dimeo, 311 Ill.App.3d at 154, 243 Ill.Dec. 783, 724 N.E.2d 92. However, this court has held that the CTA may be estopped from asserting a failure to comply, with section 41 where a plaintiff demonstrates that "she was led to detrimentally rely upon the conduct or statements of the CTA and that such reliance was in good faith." Dimeo, 311 Ill.App.3d at 154, 243 Ill.Dec. 783, 724 N.E.2d 92. The defense of estoppel is available when there is evidence in the record that conduct or statements by the CTA led the plaintiff to reasonably believe his claim would be settled without filing a lawsuit, or "`lull[ed] [the] plaintiff into a false sense of security which caus[ed] him to delay the assertion of his rights [citation]'" or intended to prevent the plaintiff from "`ascertaining [his] legal rights and obligations [citation].'" Niziolek v. Chicago Transit Authority, 251 Ill.App.3d 537, 545, 189 Ill. Dec. 780, 620 N.E.2d 1097 (1993).
For instance, in Pothier v. Chicago Transit Authority, 238 Ill.App.3d 702, 179 Ill.Dec. 699, 606 N.E.2d 531 (1992) and Searcy v. Chicago Transit Authority, 146 Ill.App.3d 779, 100 Ill.Dec. 432, 497 N.E.2d 410 (1986), this court found that the plaintiffs had alleged sufficient facts to raise the issue of equitable estoppel where the plaintiffs asserted that CTA claims representatives had actively misled them into believing the CTA admitted liability and would settle their claims. We have, however, refused to invoke the doctrine of estoppel to excuse noncompliance with section 41 where a plaintiffs attorney was assured by a claims representative that "settlement was proceeding" (Sanders v. Chicago Transit Authority, 220 Ill.App.3d 505, 506, 163 Ill.Dec. 260, 581 N.E.2d 211 (1991)), or where a plaintiff's lawyer followed the instructions of a claims representative and those instructions did not include the submission of formal notice (Niziolek, 251 Ill.App.3d at 540, 189 Ill.Dec. 780, 620 N.E.2d 1097).
There is no evidence in this case that plaintiff relied to her detriment on any statements or actions of the CTA. The CTA did not admit liability or assure plaintiff that her lawsuit would be settled out of court as it did in Pothier and Searcy. Plaintiff does not even allege that the CTA *91 gave her instructions suggesting that formal notice was not required as in Sanders and Niziolek. Plaintiff here was represented by counsel, who was clearly aware of the requirements of section 41, but failed to comply with those requirements. The CTA had no affirmative duty to notify plaintiff of her defective notice (see Cione, 322 Ill.App.3d at 98, 255 Ill.Dec. 18, 748 N.E.2d 722 (the burden of strict compliance falls solely on the plaintiff)), and its failure to do so is not the type of conduct implicated under the doctrine of equitable estoppel.
Finally, the CTA argues that even if we were to find plaintiff's cause of action was improperly dismissed due to the incorrect date, plaintiff also failed to provide the names and addresses of her attending physicians as required by section 41. Although this ground for dismissal was not raised before the trial court, the CTA urges that an appellee may raise any issue of record to protect the judgment below on appeal. Watson v. Howard, 322 Ill.App.3d 562, 567, 255 Ill.Dec. 326, 749 N.E.2d 427 (2001), citing Kravis v. Smith Marine, Inc., 60 Ill.2d 141, 147, 324 N.E.2d 417 (1975) ("an appellee [may] defend a judgment on review by raising an issue not previously ruled upon by the trial court if the necessary factual basis for the determination of such point was contained in the record"). In our discretion, we may at the very least consider this additional ground; however, there is a question as to whether section 41 requires the disclosure of all of a plaintiffs attending physicians. In this case, plaintiff disclosed the names of two treating physicians and two hospitals. Morever, an additional question is raised by the disclosure here regarding whether the failure to provide the attending physician's address is fatal. If this were the case, plaintiffs cause of action would have been properly dismissed for her failure to provide the addresses of her two disclosed physicians. However, we need not consider this question here since affirmance of the trial court's decision is mandated by plaintiff's failure to supply the correct date of the occurrence.
For the foregoing reasons, we affirm the judgment of the circuit court.
Affirmed.
McNULTY and SMITH, JJ., concur.